# EXHIBIT A



**CT Corporation**
**Service of Process Notification**
07/31/2025
CT Log Number 549750913

## Service of Process Transmittal Summary

**TO:**　　Douglas Keaton
　　　　　Nestle Usa, Inc.
　　　　　30003 Bainbridge Rd
　　　　　Solon, OH 44139-2290

**RE:**　　**Process Served in Ohio**

**FOR:**　　Nestle USA, Inc.  (Domestic State: DE)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Re: NASIM SEIFI // To: Nestle USA, Inc. |
| **DOCUMENT(S) SERVED:** | Summons, Attachment(s), Complaint, Demand |
| **COURT/AGENCY:** | Cuyahoga County Court of Common Pleas, OH<br>Case # CV25121110 |
| **NATURE OF ACTION:** | Employee Litigation - Wrongful Termination - 08/27/2024 |
| **PROCESS SERVED ON:** | C T Corporation System, Columbus, OH |
| **DATE/METHOD OF SERVICE:** | By Traceable Mail on 07/31/2025 postmarked: "Not Post Marked" |
| **JURISDICTION SERVED:** | Ohio |
| **APPEARANCE OR ANSWER DUE:** | Within 28 days after receipt, not counting the day of receipt |
| **ATTORNEY(S)/SENDER(S):** | Brian D. Spitz<br>SPITZ, THE EMPLOYEE'S LAW FIRM<br>3Summit Park Drive Suite 200<br>Independence, OH 44131<br>216-291-4744 |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 08/01/2025, Expected Purge Date: 08/06/2025<br><br>Image SOP<br><br>Email Notification,  Douglas Keaton  douglas.keaton@us.nestle.com<br><br>Email Notification,  Jackie Combs  jackie.combs@us.nestle.com<br><br>Email Notification,  Douglas Besman  Douglas.Besman@us.nestle.com<br><br>Email Notification,  Hillary Anderson  hillary.anderson@us.nestle.com<br><br>Email Notification,  Barbara Sanchez  barbara.sanchez@us.nestle.com |
| **REGISTERED AGENT CONTACT:** | C T Corporation System<br>4400 Easton Commons Way<br>Suite 125<br>Columbus, OH 43219<br>8775647529<br>MajorAccountTeam2@wolterskluwer.com |



**CT Corporation**
**Service of Process Notification**
07/31/2025
CT Log Number 549750913

The information contained in this Transmittal is provided by CT for quick reference only. It does not constitute a legal opinion, and should not otherwise be relied on, as to the nature of action, the amount of damages, the answer date, or any other information contained in the included documents. The recipient(s) of this form is responsible for reviewing and interpreting the included documents and taking appropriate action, including consulting with its legal and other advisors as necessary. CT disclaims all liability for the information contained in this form, including for any omissions or inaccuracies that may be contained therein.

United States Postal Service®

CERTIFIED MAIL®

POSTAGE PITNEY BOWES

ZIP 44102
02 4W
0000367032 JUL 22 2025

$ 010.84



NAILAH K. BYRD
1200 Ontario
Cleveland, OH 44113

Case# CV25121110

RETURN RECEIPT REQUESTED ELECTRONICALLY



9314 8001 1300 3551 8811 51

NESTLE USA,  INC.
C/O CT CORPORATION SYSTEM
4400 EASTON COMMONS WAY, STE 125
COLUMBUS OH 43219

## THE COURT OF COMMON PLEAS, CIVIL DIVISION
## CUYAHOGA COUNTY, OHIO

Clerk of Courts | The Justice Center | 1200 Ontario Street 1st Floor, Cleveland, Ohio 44113

<u>NASIM SEIFI</u>
**Plaintiff**

V.

<u>NESTLE USA, INC., ET AL</u>
**Defendant**

**CASE NO.** CV25121110

**JUDGE** JOAN SYNENBERG

# SUMMONS SUMC CM

**Notice ID:** 57587919

|||||||||||||||||||||||||||||

| From: | NASIM SEIFI | P1 |
| | 5006 LAKE VIEW DR. | |
| | PENINSULA OH 44264 | |

| Atty.: | BRIAN D SPITZ |
| | 3 SUMMIT PARK DR STE 200 |
| | INDEPENDENCE, OH 44131-0000 |

| To: | NESTLE USA, INC. | D1 |
| | C/O CT CORPORATION SYSTEM | |
| | 4400 EASTON COMMONS WAY, STE 125 | |
| | COLUMBUS OH 43219-0000 | |

### NOTICE TO THE DEFENDANT:

The Plaintiff has filed a lawsuit against you in this Court. You are named as a defendant. A copy of the **Complaint** is attached.

If you wish to respond to the Complaint, you must deliver a written **Answer** to the Plaintiff's attorney (or the Plaintiff if not represented by an attorney) at the above address *within 28 days* after receiving this Summons (not counting the day you received it). A letter or a phone call will not protect you. Civil Rule 5 explains the ways that you may deliver the **Answer** (http://www.supremecourt.ohio.gov/LegalResources/Rules/civil/CivilProcedure.pdf)

You must also file a copy of your **Answer** with this Court within 3 days *after* you serve it on the Plaintiff. You can file your **Answer** with the Clerk of Courts by one of the following methods: 1) In-person or by mail at the above address or 2) electronically through the online e-Filing system. For more information on using the e-Filing system, visit http://coc.cuyahogacounty.gov/en-US/efiling.aspx.

If you fail to serve *and* file your **Answer**, you will lose valuable rights. The Court will decide the case in favor of the Plaintiff and grant the relief requested in the **Complaint** by entering a default judgment against you.

You may wish to hire an attorney to represent you. Because this is a civil lawsuit, the Court cannot appoint an attorney for you. If you need help finding a lawyer, contact a local bar association and request assistance.



**Nailah K. Byrd**
**Clerk of Court of Common Pleas**
**216-443-7950**

Date Sent: <u>07/21/2025</u>

By_____
**Deputy**

CMSN130



# Cuyahoga County Clerk of Courts
## Nailah K. Byrd

**Multilingual Notice:**

You have been named as a defendant in this Court. You must file an answer within 28 days; if you fail to answer, the Court may enter judgment against you for the relief stated in the Complaint. Seek assistance from both an interpreter and an attorney. Your inability to understand, write, or speak English will not be a defense to possible judgment against you.

1. **Spanish (US)**
   ***Aviso multilingüe:**

   Este Tribunal lo ha declarado como acusado. Debe presentar una respuesta en un plazo de 28 días. Si no contesta en dicho plazo, el Tribunal podrá dictar sentencia en su contra por el amparo que se detalla en la demanda. Solicite la ayuda de un intérprete y de un abogado. Su incapacidad para comprender, escribir o hablar inglés no se considerará como defensa ante una posible sentencia en su contra.

2. **Somali**
   ***Ogeysiis luqadda badan ah:**

   Waxaa laguu magacaabay sida eedeysane gudaha Maxkamadan. Waa in aad ku soo gudbisaa jawaab 28 maalmood gudahood; haddii aad ku guuldareysto jawaabta, Maxkamada laga yaabo in ay gasho xukun adiga kaa soo horjeedo ee ka nasashada lagu sheegay Cabashada. Raadi caawinta ka timid labadaba turjubaanka iyo qareenka. Karti la'aantaada aad ku fahmo, ku qoro, ama ku hadasho Af Ingiriisiga ma noqon doonto difaacida xukunkaaga suuralka ah ee adiga kugu lidka ah.

3. **Russian**
   ***Уведомление на разных языках:**

   Вы были названы в качестве ответчика в данном суде. Вы должны предоставить ответ в течение 28 дней; если Ваш ответ не будет получен, суд может вынести решение против Вас и удовлетворить содержащиеся в жалобе требования. Воспользуйтесь услугами переводчика и адвоката. Тот факт, что Вы не понимаете английскую речь и не можете читать и писать по-английски, не является препятствием для возможного вынесения судебного решения против Вас.

4. **Arabic**
   ***ملاحظة متعددة اللغات:**

   لقد تم اعتبارك مدعى عليه في هذه المحكمة. يجب أن تقدم ردا خلال 28 يوما؛ وإذا لم تقم بالرد، فقد تصدر المحكمة حكما ضدك بالتعويض المنصوص عليه في هذه الشكوى القضائية. اطلب المساعدة من مترجم فوري ومحام. فلن تعد عدم قدرتك على فهم اللغة الإنجليزية أو كتابتها أو تحدثها دفاعا لك أمام الحكم المحتمل ضدك.

5. **Chinese (Simplified)**
   ***多語版本通知：**

   您在本法庭已被列为被告。您必须于 28 日内递交答辩状；如果没有递交答辩状，法庭会针对诉状中声明的补救措施对您作出不利判决。请向口译人员和律师寻求帮助。您无法理解、书写或说英语的情况不能作为对您可能作出不利判决的辩护理由。



**NAILAH K. BYRD**
**CUYAHOGA COUNTY CLERK OF COURTS**
1200 Ontario Street
Cleveland, Ohio 44113

## Court of Common Pleas

**New Case Electronically Filed: COMPLAINT**
**July 18, 2025 15:58**

By: BRIAN D. SPITZ 0068816

Confirmation Nbr. 3558891

NASIM SEIFI                              CV 25 121110

    vs.

NESTLE USA, INC., ET AL           **Judge:**   JOAN SYNENBERG

**Pages Filed:** 21

IN THE COURT OF COMMON PLEAS
CUYAHOGA COUNTY

| | | |
|---|---|---|
| NASIM SEIFI<br>5006 Lake View Dr.<br>Peninsula, OH 44264 | ) ) ) ) | CASE NO.<br><br>JUDGE: |
| Plaintiff, | ) ) ) | |
| v. | ) ) | **COMPLAINT FOR DAMAGES<br>AND REINSTATEMENT** |
| NESTLÉ USA, INC.<br>30500 Bainbridge Rd.<br>Solon, OH 44139 | ) ) ) ) | **JURY DEMAND ENDORSED<br>HEREIN** |
| **Serve also:**<br>Nestlé USA, Inc.<br>c/o CT Corporation System<br>4400 Easton Commons Way, STE 125<br>Columbus, OH 43219 | ) ) ) ) ) ) | |
| -and- | ) ) | |
| MICHAEL GRAY<br>c/o Nestlé USA, Inc.<br>30500 Bainbridge Rd.<br>Solon, OH 44139 | ) ) ) ) ) | |
| Defendants. | ) ) | |

Plaintiff, Nasim Seifi, by and through undersigned counsel, as her Complaint against

Defendants, states and avers the following:

**PARTIES AND VENUE**

1. Seifi is a resident of the city of Peninsula, County of Summit, State of Ohio.

2. Nestlé USA, Inc. is a foreign corporation that operates a place of business located at 30500

   Bainbridge Rd., Solon, OH 44139.

3. Nestlé was at all times hereinafter mentioned, an "employer" within the meaning of R.C. §

   4112.01 *et seq.*

4. Defendant Michael Gray was at all times relevant an individual employed in a supervisory or managerial capacity by Nestlé.

5. Gray is a resident of the State of Virginia.

6. This Court has jurisdiction over Defendants pursuant to R.C. § 2307.382(A)(1) and (4).

7. All of the material events alleged in this Complaint occurred in Cuyahoga County.

8. Venue is proper pursuant to Civ. R. 3(C)(3) & (6).

9. This Court is a court of general jurisdiction over all claims presented herein.

## FACTUAL ALLEGATIONS

### A. Qualifications and Race/National Origin

10. Seifi is a former employee of Nestlé.

11. Nestlé hired Seifi on or around April 14, 2014.

12. Seifi progressed through various positions during her time at Nestlé.

13. In or around October 2021, Seifi began working as an HR Compliance Analyst.

14. Seifi consistently performed her job duties in a satisfactory manner.

15. Seifi is Iranian.

### B. Race Discrimination, National Origin Discrimination, and Retaliation

16. Nestlé employed Gray as Director of HR Compliance.

17. Gray is African American.

18. In or around 2022, Seifi attended a team meeting regarding an assignment ("2022 Assignment").

19. In the team meeting, Seifi spoke about the 2022 Assignment for only a few minutes.

20. In the team meeting, Gray targeted and harassed Seifi after she discussed the 2022 Assignment ("2022 Assignment Incident").

21. The 2022 Assignment Incident included Gray berating Seifi for speaking "too long."

22. The 2022 Assignment Incident included Gray threatening to issue Seifi a write-up if she spoke "too long" in any future meetings.

23. Gray made Seifi feel as though she could not speak during team meetings.

24. Gray did not berate non-Iranian employees who spoke during team meetings.

25. Gray did not threaten to write-up non-Iranian employees for speaking "too long" during team meetings.

26. Gray did not make non-Iranian employees feel as though they could not speak during team meetings.

27. The 2022 Assignment Incident was based on Seifi's race.

28. The 2022 Assignment Incident based on Seifi's national origin.

29. Seifi opposed the 2022 Assignment Incident ("Opposing the 2022 Assignment Incident").

30. Seifi's first two performance reviews with Gray were satisfactory.

31. Seifi's performance reviews changed when Gray became her direct supervisor.

32. Seifi received her first negative performance review from Gray in or around January 2024 ("Third Performance Review").

33. Seifi's Third Performance Review did not critique the quality of her work.

34. Seifi's Third Performance Review criticized how Seifi completed her work.

35. In Seifi's Third Performance Review, Gray emphasized how he preferred that Seifi complete her work.

36. In the Third Performance Review, Gray referred to Seifi as "argumentative."

37. In the Third Performance Review, Gray referred to Seifi as "inflexible."

38. Seifi's Third Performance Review was false.

39. Seifi felt that her Third Performance Review was unfair.

40. Gray did not critique how non-Iranian employees completed their work.

41. Gray did not refer to non-Iranian employees as "argumentative."

42. Gray did not refer to non-Iranian employees as "inflexible."

43. Gray did not base Seifi's Third Performance Review on the results of her work.

44. Gray based Seifi's Third Performance Review on her race.

45. Gray based Seifi's Third Performance Review on her national origin.

46. Opposing the 2022 Assignment Incident was a protected activity.

47. Defendants' Third Performance Review was retaliation for Opposing the 2022 Assignment Incident.

48. Defendants' Third Performance Review was because of Seifi's race.

49. Defendants' Third Performance Review was because of Seifi's national origin.

50. By doing the Third Performance Review, Defendants made it less likely for a reasonable employee to make a report or oppose conduct like 2022 Assignment Incident.

51. The Third Performance Review constitutes retaliation.

52. The Third Performance Review constitutes race discrimination.

53. The Third Performance Review constitutes national origin discrimination.

54. Defendants willfully engaged in the Third Performance Review.

55. Defendants intentionally engaged in the Third Performance Review.

56. The Third Performance Review was an adverse action.

57. The Third Performance Review was an adverse employment action.

58. Defendants engaged in the Third Performance Review with the intent to make Seifi quit.

59. The Third Performance Review created an unlawfully discriminatory hostile work environment.

4

60. The Third Performance Review contributed to an unlawfully discriminatory hostile work environment.

61. Seifi opposed the Third Performance Review ("Opposing the Third Review").

62. Beginning in early 2024, Gray began excluding Seifi from meetings regarding her assignments.

63. In 2024, Gray directed team members to work together to complete an assignment ("2024 Assignment").

64. Gray removed Seifi from the 2024 Assignment ("2024 Assignment Removal").

65. Gray provided no explanation to Seifi for the 2024 Assignment Removal.

66. Gray provided no notification to Seifi regarding the 2024 Assignment Removal.

67. Gray did not remove non-Iranian employees from the 2024 Assignment.

68. Gray did not remove non-Iranian employees from any assignments.

69. Opposing the Third Review was a protected activity.

70. Defendants' 2024 Assignment Removal constitutes retaliation for Opposing the Third Review.

71. Defendants' 2024 Assignment Removal constitutes retaliation for Opposing the 2022 Assignment Incident.

72. Defendants' 2024 Assignment Removal was because of Seifi's race.

73. Defendants' 2024 Assignment Removal was because of Seifi's national origin.

74. By doing the 2024 Assignment Removal, Defendants made it less likely for a reasonable employee to make a report or oppose conduct like the Third Performance Review.

75. By doing the 2024 Assignment Removal, Defendants made it less likely for a reasonable employee to make a report or oppose conduct like the 2022 Assignment Incident.

76. The 2024 Assignment Removal constitutes retaliation.

77. The 2024 Assignment Removal constitutes race discrimination.

78. The 2024 Assignment Removal constitutes national origin discrimination.

79. Defendants willfully engaged in the 2024 Assignment Removal.

80. Defendants intentionally engaged in the 2024 Assignment Removal.

81. The 2024 Assignment Removal was an adverse action.

82. The 2024 Assignment Removal was an adverse employment action.

83. Defendants engaged in the 2024 Assignment Removal with the intent to make Seifi quit.

84. The 2024 Assignment Removal created an unlawfully discriminatory hostile work environment.

85. The 2024 Assignment Removal contributed to an unlawfully discriminatory hostile work environment.

86. Seifi opposed the 2024 Assignment Removal ("Opposing the Removal").

87. Gray made numerous comments about the way that Seifi spoke.

88. Gray referred to the way that Seifi spoke as "choppy" ("Choppy Comment").

89. Gray made the Choppy Comment to Seifi because Seifi is Iranian.

90. The Choppy Comment was based on Seifi's race.

91. The Choppy Comment was based on Seifi's national origin.

92. Gray did not make comments like the Choppy Comment to non-Iranian employees.

93. Gray did not comment on the way that non-Iranian employees spoke.

94. Seifi opposed the Choppy Comment ("Opposing the Choppy Comment").

95. Opposing the Choppy Comment was a protected activity.

96. In one instance, Seifi shared a piece of Iranian news with Gray.

97. Gray discussed the Iranian News with Seifi ("News Discussion").

98. Gray informed Seifi that he followed Iranian news closely.

99. Gray followed Iranian news because of Seifi's race.

100. Gray followed Iranian news because of Seifi's national origin.

101. Gray did not follow the news of other countries as closely as he followed Iran's news.

102. Gray did not discuss the news of other countries with non-Iranian employees.

103. Seifi did not bring up Iranian news at work again after the News Discussion.

104. Seifi was afraid to bring up the News Discussion.

105. On or around April 3, 2024, Seifi lodged a complaint with Nestlé's HR Department ("First HR Complaint") against Gray.

106. In the First HR Complaint, Seifi cited the Third Performance Review.

107. Nestlé has a policy of investigating significant workplace issues or events.

108. An investigation should include interviewing the complainant.

109. An investigation should include interviewing the subject of the complaint.

110. An investigation should include interviewing the subject of the reported discrimination.

111. An investigation should include interviewing witnesses to the reported discrimination.

112. An investigation should include getting a written statement from the complainant.

113. An investigation should include getting a written statement from the subject of the complaint.

114. An investigation should include getting a written statement from the subject of the reported discrimination.

115. The First HR Complaint reported a significant workplace issue or event.

116. Pursuant to Nestlé's policies, Seifi's First HR Complaint should be investigated.

117. Alternatively, pursuant to Nestlé's policies, Seifi's First HR Complaint should not be investigated.

118. In response to the First HR Complaint, Nestlé did not interview Gray.

119. In response to the First HR Complaint, Nestlé did not interview any witnesses.

120. In response to the First HR Complaint, Nestlé did not get a written statement from Gray.

121. In response to the First HR Complaint, Nestlé did not get a written statement from any witnesses.

122. Nestlé did not conduct a full investigation into Seifi's First HR Complaint.

123. Nestlé did not conduct an effective investigation into Seifi's First HR Complaint.

124. Nestlé has no documents contemporarily created during an investigation into the First HR Complaint.

125. By failing to fully and effectively investigate the First HR Complaint, Nestlé ratified Gray's conduct.

126. By failing to fully and effectively investigate the First HR Complaint, Nestlé allowed Gray's conduct to continue.

127. Failing to fully and effectively investigate the First HR Complaint is an adverse action.

128. Failing to fully and effectively investigate the First HR Complaint is an adverse employment action.

129. Nestlé willfully failed to fully and effectively investigate the First HR Complaint.

130. Nestlé intentionally failed to fully and effectively investigate the First HR Complaint.

131. In response to the First HR Complaint, Nestlé did not correct the race discrimination.

132. In response to the First HR Complaint, Nestlé did not correct the national origin discrimination.

133. Nestlé did not tell Seifi why they declined to properly investigate the First HR Complaint.

134. Nestlé only informed Seifi that it could not substantiate the claims in the First HR Complaint.

135. In response to the First HR Complaint, Nestlé, through HR, continued to instruct Seifi to work with Gray.

### C. Retaliation for First HR Complaint

136. On or around June 29, 2024, Gray instructed Seifi that she needed to have a "tough conversation" with another colleague regarding feedback that Seifi previously received from that colleague ("Colleague Conversation").

137. Seifi had the Colleague Conversation.

138. Throughout the Colleague Conversation, Seifi reiterated to the colleague that she was not blaming anyone for the negative feedback that she received ("Feedback").

139. Seifi told the colleague that she wanted to better understand the Feedback.

140. The Feedback referred to Seifi as "argumentative."

141. The Feedback stated that Seifi, "veer[s] off track, and create[s] work that is not useful."

142. From the Colleague Conversation, Seifi realized that the Feedback did not come from the colleague.

143. From the Colleague Conversation, Seifi realized that the Feedback came from Gray.

144. After the Colleague Conversation, Gray placed Seifi on a Performance Improvement Plan ("PIP").

145. Gray claimed that he placed Seifi on the PIP for making the colleague feel uncomfortable during the Colleague Conversation.

146. Seifi did not make the colleague feel uncomfortable during the Colleague Conversation.

147. In the alternative, the colleague was uncomfortable during the Colleague Conversation because the feedback did not come from the colleague.

148. The PIP stated that Seifi needed to seek out feedback.

149. The PIP stated that Seifi needed to seek out conversations like the Colleague Conversation.

150. The PIP stated that Seifi sharing the Feedback with a colleague was a violation of Nestlé's policy.

151. Seifi sought out the Colleague Conversation at Gray's direction.

152. Nestlé does not have a policy stating that colleagues cannot share feedback with one another.

153. Nestlé encouraged its employees to share feedback they received with their colleagues to get clarification on the feedback.

154. No other employee was placed on a PIP for sharing feedback with a colleague.

155. Nestlé has a policy that PIPs be "specific, measurable, achievable, realistic, and time-bound," or "S.M.A.R.T." ("SMART Policy").

156. Seifi's PIP was not drafted in line with Nestlé's SMART Policy.

157. Seifi's PIP was abstract.

158. Seifi's PIP was confusing.

159. Seifi's PIP was difficult to follow.

160. Seifi requested that her PIP be drafted in line with the SMART Policy.

161. Defendants denied Seifi's request for a SMART policy-compliant PIP.

162. Defendants made Seifi's PIP difficult to follow in an effort to set Seifi up for termination.

163. Seifi's First HR Complaint was a protected activity.

164. Defendants issuing the PIP constitutes retaliation for the First HR Complaint.

165. Defendants issuing the PIP constitutes retaliation for Opposing the 2022 Assignment Incident.

166. Defendants issuing the PIP constitutes retaliation for Opposing the Third Review.

167. Defendants issuing the PIP constitutes retaliation for Opposing the Removal.

168. Defendants issuing the PIP constitutes retaliation for Opposing the Choppy Comment.

169. Defendants issuing the PIP was because of Seifi's race.

170. Defendants issuing the PIP was because of Seifi's national origin.

171. By issuing the PIP, Defendants made it less likely for a reasonable employee to make a report or oppose conduct like the 2022 Assignment Incident.

172. By issuing the PIP, Defendants made it less likely for a reasonable employee to make a report or oppose conduct like the Third Performance Review.

173. By issuing the PIP, Defendants made it less likely for a reasonable employee to make a report or oppose conduct like the 2024 Assignment Removal.

174. By issuing the PIP, Defendants made it less likely for a reasonable employee to make a report or oppose conduct like the Choppy Comment.

175. The PIP constitutes retaliation.

176. The PIP constitutes race discrimination.

177. The PIP constitutes national origin discrimination.

178. Defendants willfully engaged in issuing the PIP.

179. Defendants intentionally engaged in issuing the PIP.

180. Issuing the PIP was an adverse action.

181. Issuing the PIP was an adverse employment action.

182. Defendants engaged in issuing the PIP with the intent to make Seifi quit.

183. Issuing the PIP created an unlawfully discriminatory hostile work environment.

184. Issuing the PIP contributed to an unlawfully discriminatory hostile work environment.

185. Seifi opposed the PIP ("Opposing the PIP").

186. Opposing the PIP was a protected activity.

187. On or around July 31, 2024, Seifi made a second HR complaint ("Second HR Complaint").

188. In the Second HR Complaint, Seifi complained about the PIP.

189. The Second HR Complaint reported a significant workplace issue or event.

190. Pursuant to Nestlé's policies, the Second HR Complaint should be investigated.

191. Alternatively, pursuant to Nestlé's policies, the Second HR Complaint should not be investigated.

192. In response to the Second HR Complaint, Nestlé did not interview Gray.

193. In response to the Second HR Complaint, Nestlé did not interview any witnesses.

194. In response to the Second HR Complaint, Nestlé did not get a written statement from Gray.

195. In response to the Second HR Complaint, Nestlé did not get a written statement from any witnesses.

196. Nestlé did not conduct a full investigation into the Second HR Complaint.

197. Nestlé did not conduct an effective investigation into the Second HR Complaint.

198. Nestlé has no documents contemporarily created during an investigation into the Second HR Complaint.

199. By failing to fully and effectively investigate the Second HR Complaint, Nestlé ratified Gray's conduct.

200. By failing to fully and effectively investigate the Second HR Complaint, Nestlé allowed Gray's conduct to continue.

201. Failing to fully and effectively investigate the Second HR Complaint is an adverse action.

202. Failing to fully and effectively investigate the Second HR Complaint is an adverse employment action.

203. Nestlé willfully failed to fully and effectively investigate the Second HR Complaint.

204. Nestlé intentionally failed to fully and effectively investigate the Second HR Complaint.

205. In response to the Second HR Complaint, Nestlé did not correct the discriminatory PIP.

206. Nestlé did not tell Seifi why they declined to properly investigate the Second HR Complaint.

207. Nestlé only informed Seifi that it could not substantiate the claims in the Second HR Complaint.

208. Nestlé attempted to assert that Seifi's Second HR Complaint constituted a resignation.

209. At no point did Seifi resign from Nestlé.

### D. Plaintiff's Termination

210. Nestlé terminated Seifi's employment on or around August 27, 2024 ("Termination").

211. Seifi's Second HR Complaint was a protected activity.

212. The Termination constitutes retaliation for the Second HR Complaint.

213. The Termination constitutes retaliation for Opposing the Second Assignment Incident.

214. The Termination constitutes retaliation for the Opposing the Third Review.

215. The Termination constitutes retaliation for Opposing the Removal.

216. The Termination constitutes retaliation for Opposing the Choppy Comment.

217. The Termination constitutes retaliation for the First HR Complaint.

218. The Termination constitutes retaliation for Opposing the PIP.

219. The Termination was because of Seifi's race.

220. The Termination was because of Seifi's national origin.

221. By terminating Seifi, Defendants made it less likely for a reasonable employee to make a report or oppose conduct like the 2022 Assignment Incident.

222. By terminating Seifi, Defendants made it less likely for a reasonable employee to make a report or oppose conduct like the Third Performance Review.

223. By terminating Seifi, Defendants made it less likely for a reasonable employee to make a report or oppose conduct like the 2024 Assignment Removal.

224. By terminating Seifi, Defendants made it less likely for a reasonable employee to make a report or oppose conduct like the Choppy Comment.

225. By terminating Seifi, Defendants made it less likely for a reasonable employee to make a report or oppose conduct like the PIP.

226. Defendants have a progressive disciplinary policy.

227. Defendants used a progressive disciplinary policy.

228. Defendants used a progressive disciplinary policy for employees who are not Iranian.

229. Under the progressive disciplinary policy, Seifi had not been given a verbal warning related to the Termination.

230. Under the progressive disciplinary policy, Seifi had not been given a written warning related to the Termination.

231. Under the progressive disciplinary policy, Seifi had not been given a final written warning related to the Termination.

232. Under the progressive disciplinary policy, Seifi had not been given a suspension related to the Termination.

233. Prior to terminating Seifi, Defendants never issued any written communication criticizing Seifi for any reason related to the Termination.

234. The Termination constitutes retaliation.

235. The Termination constitutes race discrimination.

236. The Termination constitutes national origin discrimination.

237. Defendants willfully engaged in the Termination.

238. Defendants intentionally skipped progressive disciplinary steps in terminating Seifi's employment.

239. Defendants intentionally engaged in the Termination.

240. The Termination was an adverse action.

241. The Termination was an adverse employment action.

242. The Termination created an unlawfully discriminatory hostile work environment.

243. The Termination contributed to an unlawfully discriminatory hostile work environment.

244. Defendants knowingly skipped progressive disciplinary steps in terminating Seifi's employment.

245. Defendants knowingly terminated Seifi's employment.

246. Defendants knowingly took adverse employment actions against Seifi.

247. Defendants knowingly took adverse actions against Seifi.

248. Defendants intentionally terminated Seifi's employment.

249. Defendants intentionally took adverse employment actions against Seifi.

250. Defendants intentionally took adverse actions against Seifi.

251. Defendants knew that skipping progressive disciplinary steps in terminating Seifi would cause Seifi harm, including economic harm.

252. Defendants knew that terminating Seifi would cause Seifi harm, including economic harm.

253. Defendants willfully skipped progressive disciplinary steps in terminating Seifi's employment.

254. Defendants willfully terminated Seifi's employment.

255. There was a causal connection between Seifi's race and the Termination.

256. There was a causal connection between Seifi's national origin and the Termination.

257. As a result of Defendants' unlawful acts, Seifi has suffered, and will continue to suffer, pecuniary harm.

258. As a result of Defendants' unlawful acts, Seifi has suffered, and will continue to suffer, emotional distress.

### COUNT I: <u>RACE DISCRIMINATION IN VIOLATION OF R.C. § 4112.01 *et seq.*</u>
### (AGAINST NESTLÉ)

259. Seifi restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

260. Throughout her employment, Seifi was fully competent to perform her essential job duties.

261. Nestlé treated Seifi differently than other similarly situated employees based on her race.

262. Nestlé violated R.C. § 4112.01 *et seq.* by discriminating against Seifi due to her race.

263. At all times material herein, similarly situated non-Iranian employees were not terminated without just cause.

264. Nestlé terminated Seifi based on her race.

265. Nestlé violated R.C. § 4112.01 *et seq.* when it terminated Seifi based on her race.

266. Seifi suffered emotional distress as a result of Nestlé's conduct, and is entitled emotional distress damages pursuant to R.C. § 4112.01 *et seq.*

267. As a direct and proximate result of Nestlé's conduct, Seifi has suffered and will continue to suffer damages, including economic and emotional distress damages.

### COUNT II: <u>NATIONAL ORIGIN DISCRIMINATION IN VIOLATION OF R.C. § 4112.01 *et seq.*</u>
### (AGAINST NESTLÉ)

268. Seifi restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

269. Throughout her employment, Seifi was fully competent to perform her essential job duties.

270. Nestlé treated Seifi differently than other similarly situated employees based on her national origin.

271. Nestlé violated R.C. § 4112.01 *et seq.* by discriminating against Seifi due to her national origin.

272. At all times material herein, similarly situated non-Iranian employees were not terminated without just cause.

273. Nestlé terminated Seifi based on her national origin.

274. Nestlé violated R.C. § 4112.01 *et seq.* when it terminated Seifi based on her national origin.

275. Seifi suffered emotional distress as a result of Nestlé's conduct, and is entitled emotional distress damages pursuant to R.C. § 4112.01 *et seq.*

276. As a direct and proximate result of Nestlé's conduct, Seifi has suffered and will continue to suffer damages, including economic and emotional distress damages.

### COUNT III: <u>UNLAWFUL AIDING, ABETTING, AND INCITING OF DISCRIMINATION UNDER .C. § 4112.02(J)</u>
### (AGAINST GRAY)

277. Seifi restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

278. Pursuant to R.C. § 4112.02(J), it is unlawful "[f] or any person to aid, abet, incite, compel, or coerce the doing of any act declared by this section to be an unlawful discriminatory practice..."

279. Gray aided, abetted, incited, coerced, and/or compelled Nestlé's discriminatory Termination of Seifi.

280. Gray aided, abetted, incited, coerced, and/or compelled Nestlé's discriminatory treatment of Seifi.

281. Gray violated R.C. § 4112.02(J) and § 4112.99 by aiding, abetting and inciting discrimination.

282. Seifi suffered emotional distress as a result of Gray's conduct, and is entitled emotional distress damages pursuant to R.C. § 4112.01 *et seq.*

283. As a direct and proximate result of Gray's conduct, Seifi has suffered and will continue to suffer damages, including economic and emotional distress damages.

## COUNT IV: RETALIATION IN VIOLATION OF R.C. § 4112.02(I)
### (AGAINST ALL DEFENDANTS)

284. Seifi restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

285. As a result of Defendants' discriminatory conduct described above, Seifi complained about and opposed the race and national origin discrimination she was experiencing.

286. Subsequent to Seifi's reporting and opposing of race and national origin discrimination to Defendants, Defendants took adverse actions against Seifi.

287. Subsequent to Seifi's reporting and opposing of race and national origin discrimination to Defendants, Defendants failed to take prompt remedial action.

288. Subsequent to Seifi's reporting and opposing of race and national origin discrimination to Defendants, Defendants ratified the discrimination that Seifi suffered.

289. Subsequent to Seifi's opposing and reporting of race and national origin discrimination to Defendants, Defendants terminated Seifi's employment.

290. Defendants' actions were retaliatory in nature based on Seifi's opposition to the unlawful discriminatory conduct.

291. Pursuant to R.C. §4112.02(I), it is an unlawful discriminatory practice "to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in this section…"

292. Seifi suffered emotional distress as a result of Defendants' conduct, and is entitled emotional distress damages pursuant to R.C. § 4112.01 *et seq.*

293. As a direct and proximate result of Defendants' retaliatory discrimination against and termination of Seifi, she suffered and will continue to suffer damages, including economic and emotional distress damages.

## **DEMAND FOR RELIEF**

WHEREFORE, Nasim Seifi demands from Defendants the following:

    (a) Economic damages including back pay, front pay, and lost benefits.

    (b) Compensatory damages for emotional distress, humiliation, and anxiety.

    (c) Punitive damages in an amount sufficient to deter future unlawful conduct.

    (d) Reasonable attorneys' fees and costs incurred.

    (e) Reinstatement to her previous position or an equivalent position.

    (f) An injunction preventing Nestlé and its agents from engaging in future acts of discrimination and retaliation.

    (g) Pre-judgment and post-judgment interest.

    (h) Any further relief that this Court deems just and equitable.

Respectfully submitted,

Brian D. Spitz (0068816)
Bella Kneidel (0104653)
**SPITZ, THE EMPLOYEE'S LAW FIRM**
3 Summit Park Drive
Suite 200
Independence, OH 44131
Phone: (216) 291-4744
Fax:    (216) 291-5744
Email: brian.spitz@spitzlawfirm.com
       bella.kneidel@spitzlawfirm.com

*Attorneys For Plaintiff Nasim Seifi*

## JURY DEMAND

Plaintiff Nasim Seifi demands a trial by jury by the maximum number of jurors permitted.

Brian D. Spitz (0068816)
**SPITZ, THE EMPLOYEE'S LAW FIRM**

## THE COURT OF COMMON PLEAS, CIVIL DIVISION
## CUYAHOGA COUNTY, OHIO

Clerk of Courts | The Justice Center | 1200 Ontario Street 1st Floor, Cleveland, Ohio 44113

<u>NASIM SEIFI</u>
**Plaintiff**

V.

<u>NESTLE USA, INC., ET AL</u>
**Defendant**

**CASE NO.**  CV25121110

**JUDGE**  JOAN SYNENBERG

# SUMMONS   SUMC  CM

**Notice ID:**  57587920

From:  NASIM SEIFI                    P1
       5006 LAKE VIEW DR.
       PENINSULA OH 44264

Atty.:  BRIAN D SPITZ
        3 SUMMIT PARK DR STE 200
        INDEPENDENCE, OH 44131-0000

To:  MICHAEL GRAY                     D2
     C/O NESTLÉ USA, INC.
     30500 BAINBRIDGE RD.
     SOLON OH 44139

**NOTICE TO THE DEFENDANT:**

The Plaintiff has filed a lawsuit against you in this Court. You are named as a defendant. A copy of the **Complaint** is attached.

If you wish to respond to the Complaint, you must deliver a written **Answer** to the Plaintiff's attorney (or the Plaintiff if not represented by an attorney) at the above address *within 28 days* after receiving this Summons (not counting the day you received it). A letter or a phone call will not protect you. Civil Rule 5 explains the ways that you may deliver the **Answer** (http://www.supremecourt.ohio.gov/LegalResources/Rules/civil/CivilProcedure.pdf)

You must also file a copy of your **Answer** with this Court within 3 days *after* you serve it on the Plaintiff.  You can file your **Answer** with the Clerk of Courts by one of the following methods: 1) In-person or by mail at the above address or 2) electronically through the online e-Filing system. For more information on using the e-Filing system, visit http://coc.cuyahogacounty.gov/en-US/efiling.aspx.

If you fail to serve *and* file your **Answer**, you will lose valuable rights. The Court will decide the case in favor of the Plaintiff and grant the relief requested in the **Complaint** by entering a default judgment against you.

You may wish to hire an attorney to represent you. Because this is a civil lawsuit, the Court cannot appoint an attorney for you. If you need help finding a lawyer, contact a local bar association and request assistance.



**Nailah K. Byrd**
**Clerk of Court of Common Pleas**
**216-443-7950**

Date Sent: <u>07/21/2025</u>

By_____
                **Deputy**

CMSN130

**UNITED STATES**
**POSTAL SERVICE.**

Date Produced: 07/28/2025

CERTIFIED MAIL SOLUTIONS INC.:

The following is the delivery information for Certified Mail™/RRE item number 9314 8001 1300 3551 8811 68. Our records indicate that this item was delivered on 07/24/2025 at 10:18 a.m. in SOLON, OH 44139. The scanned image of the recipient information is provided below.

Signature of Recipient :

Address of Recipient :        **30500 BAINBRIDGE RD, SOLON, OH 44139**

Thank you for selecting the Postal Service for your mailing needs.  If you require additional assistance, please contact your local post office or Postal Service representative.

Sincerely,
United States Postal Service

The customer reference number shown below is not validated or endorsed by the United States Postal Service. It is solely for customer use.

Customer Reference Number:      Case   CV25121110
CV25121110 / 57587920 / GRAY/MICHAEL/ / 2025-7-31 13:21  Sent To: C/O NESTLÁ USA, INC. 30500 BAINBRIDGE RD. SOLON, OH 44139